UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ x

JOSHUA LEE WILLIAMS, ANTONIO MAENZA, AND
WILLIAM COLLINS,

                                            Plaintiffs,

                    -against-

THE CITY OF NEW YORK; POLICE COMMISSIONER
RAYMOND KELLY; POLICE OFFICER KHARL O.
PINNOCK, SHIELD NO. 30827; POLICE OFFICER
JIMMY A. PONCE, SHIELD NO. 4355, JOHN DOE
POLICE OFFICERS ##1-6; JOHN DOE 79TH PRECINCT
SUPERVISORS ## 1-4, INTERNAL AFFAIRS BUREAU
OFFICERS ##1-4,

                                            Defendants.

------------------------------------------------------------------------ x

**COMPLAINT AND
JURY DEMAND**

**ECF CASE**

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiffs seek relief for the violation of their

rights secured by 42 USC §§1983, 1985(2) and (3), and 1988, the Fourth and Fourteenth

Amendments.

2.      The claim arises from an incident that took place in the early morning hours of

June 2, 2013, when police officers brutally assaulted plaintiff Joshua Williams and assaulted

plaintiffs Antonio Maenza and William Collins, and falsely arrested each. In addition, they were

subjected to insults by the police officer based on their perceived sexual orientation, and deterred

from recording police misconduct by IAB officers.

3.      Plaintiffs seek monetary damages (special, compensatory, and punitive) against

defendants, as well as an award of costs and attorneys' fees, and such other and further relief as

the Court deems just and proper.

## JURISDICTION

4.      This action is brought pursuant to 28 USC §1331 and 42 USC §1983.  Pendent party jurisdiction and supplementary jurisdiction over Plaintiffs' state law claims are asserted.

5.      The amount in controversy exceeds $75,000.00 excluding interest and costs.

6.      Venue is laid within the United States District Court for the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

7.      Plaintiffs are citizens of the United States and at all times here relevant resided in Brooklyn, New York.

8.      The City of New York ("the City") is a municipal corporation organized under the laws of the State of New York.

9.      Former NYPD Commissioner Raymond Kelly was at all times here relevant the Commissioner of NYPD.  As such Kelly was personally involved in creating and continuing NYPD and City policies and practices referenced herein, and was personally involved in training, supervision, and discipline of NYPD officers, including the individual defendants herein.

10.     The John Doe Supervising Officers were at all times here relevant NYPD supervisors charged with the monitoring, training and supervision of the individual tortfeasing officers.  As such, they were personally responsible for the failure in such training, monitoring and supervision of the individual officers, causing injury to plaintiffs.

11.     The John Doe IAB officers were at all times here relevant NYPD officers charged

with investigating police misconduct and to ensure accountability of police officers.   In investigating this case, they discouraged and deterred plaintiffs from recording and reporting police misconduct, creating an environment of impunity causing such injury.

12.     All other individual defendants ("the officers"), were at all times relevant correction officers, captains, assistant deputy wardens, and deputy wardens employed by the DOC, and are sued in their individual and official capacities.

13.     At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

14.     Plaintiffs have each filed timely notices of claim.   30 days have elapsed since the service of each notice of claim and the matter has not be resolved or disposed.

## FACTUAL ALLEGATIONS

15.     On June 2, 2013 at approximately 4:00 A.M., the three plaintiffs were walking home together to their apartment at 485 Quincey St., Brooklyn, NY.  They were walking East on Lexington Avenue and had just crossed Tompkins Avenue when defendant police officer Pinnock called them over to the parking lot of the 79th Precinct.  Plaintiffs complied.

16.     Defendant Pinnock falsely accused plaintiff Joshua Williams of urinating on the street.  Joshua Williams did not urinate outside nor commit or attempt to commit any crime or violation.  He was simply walking home with friends.

17.     Plaintiff Joshua Williams denied urinating in the street, and the three continued on their walk home.  Defendant Pinnock followed them and demanded to see identification. Plaintiff William Collins responded by asking if they were being detained.  Defendant Pinnock

responded by physically attacking Plaintiff Joshua Williams.

18.     Approximately five other officers responded to the scene and "assisted" Defendant Pinnock by assaulting Plaintiffs Collins and Maenza and verbally abusing them, as well as continuing the assault on Plaintiff Williams.

19.     As Plaintiff Williams was being taken to the precinct, Plaintiff Collins asked one of the Defendant officers for badge numbers. The officer refused. As the remaining officers began walking back to the precinct, the officer who had refused to give any badge numbers shouted the words "fucking faggots" at Plaintiffs Collins and Maenza. When Plaintiff Collins, now angry at the discriminatory insult, shouted an insult back at him, the police officers went back to plaintiffs Collins and Maenza and assaulted and arrested them. When plaintiffs asked what they were being charged with, one of the officers responded "we will find something".

20     Each plaintiff was held in custody until the next day.

21.     Plaintiffs Collins and Maenza were charged with Obstructing Governmental Administration. Plaintiffs deny the accusation. The charges were adjourned in contemplation of dismissal and ultimately dismissed and sealed.

22.     Plaintiff Williams was charged with a violation for public urination and resisting arrest. Plaintiff Williams denies the accusation. Pursuant to the motion filed by the Kings County District Attorney's Office that the case could not be proved beyond a reasonable doubt, the case was dismissed at the first court appearance after arraignment.

23.     At all times during the events described above, the officers were engaged in a joint venture and formed an agreement with each other to violate Plaintiffs' constitutional rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said

4

events. They failed to intervene in the obviously illegal actions of their fellow officers against Plaintiffs. They acted maliciously and with intent to injure Plaintiffs, and at best with deliberate indifference to a known threat of physical injury from other inmates. As a direct and proximate result of the acts of defendants, Plaintiff suffered the following injuries and damages:

  a. Violation of their right to Due Process of Law under the Fourteenth Amendment to the United States Constitution;

  b. Violation of their right to equal protection of Law under the Fourteenth Amendment to the United States Constitution;

  c. Violation of their right under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and seizures;

  d. Physical pain and suffering;

  e. Permanent scarring;

  f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, horror, frustration, extreme inconvenience, and anxiety; and

  g. Deprivation of liberty.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983
False Arrest and False Imprisonment of All Plaintiffs

25.    The above paragraphs are here incorporated by reference.

26.    The officer defendants wrongfully and illegally arrested detained and imprisoned plaintiffs.

27.    The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent,

and without probable cause or reasonable suspicion.

At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

28.     Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

All of this occurred without any illegal conduct by plaintiffs.

All charges were dismissed.

29.     The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

30.     As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

SECOND CAUSE OF ACTION
42 U.S.C. § 1983
Malicious Prosecution of Plaintiff Joshua Williams

31.     The preceding paragraphs are here incorporated by reference.

32.     Defendants, acting with malice, initiated a prosecution against plaintiff Williams and caused them to be prosecuted.

33.     Defendants did not have probable cause to initiate proceedings.

34.     The criminal proceedings were terminated in plaintiffs' favor.

35.     Defendants have deprived plaintiffs of their civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under 42 U.S.C. §1983.

36.     As a result of the malicious prosecution initiated and maintained by defendants, plaintiff Williams was damaged.

THIRD CAUSE OF ACTION
42 U.S.C. §1983
Excessive Force Used Against Plaintiffs

37.     The above paragraphs are here incorporated by reference.

38.     By using excessive force against plaintiffs, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

39.     In addition, the officer defendants conspired amongst themselves to deprive plaintiffs of their constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

40.     The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

41.    As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

### FOURTH CAUSE OF ACTION
### (42 U.S.C. § 1983- MUNICIPAL AND SUPERVISORY LIABILITY)

42.    The above paragraphs are here incorporated by reference.

43.    The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[1] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3] More than 40% of those settlements in 2011 stem from excessive force and false arrest. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing

---

1 Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[2] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[3] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

44.     However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.  In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

45.     Indeed, Defendant Officer Pinnock had been the subject of at least three civil lawsuits prior to this incident, all of which were settled for monetary damages paid to plaintiff. Nevertheless, the repeated civil lawsuits against this defendant appears to have had no

discenrnible effect on the career of Defendant Pinnock.

46.     The City is liable for the damages suffered by plaintiffs in that, after learning of their employees' violation of plaintiffs' constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event.

47.     The aforesaid event underlying plaintiffs' factual allegations was not an isolated incident.  The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.  Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

48.     The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal

Year 2009, compared to $80 million in 2008.[4] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[5]

49.     Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

50.     Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits.  Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests. The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have

---

[4] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[5] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[6]

51.     The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB.  In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB.  The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

52.     The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct.  In 2002, the percentage of officers who were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[7] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized.  Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done

---

[6] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited May 26, 2010.
[7] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

on many occasions.  This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

53.     Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.  Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

54.     All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

55.     The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

56.     Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, Plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A.     In favor of Plaintiff in an amount to be determined by a jury for each of Plaintiff's causes of action;

B.     Awarding Plaintiff punitive damages in an amount to be determined by a jury;

C.     Awarding Plaintiff reasonable attorneys' fees, costs and disbursements of this action; and

D.     Granting such other and further relief as this Court deems just and proper.

**JURY DEMAND**

14

Plaintiff demands a trial by jury.

DATED:      Brooklyn, New York
            May 18, 2015

TO:    New York City Corporation Counsel
       100 Church Street, 4th floor
       New York, NY  10007

            Commissioner Ray Kelly

       Police Officer Kharl O. Pinnock Shield No.
       30827

       Police Officer Jimmy A. Ponce, Shield No.
       4355

Yours, etc.,

Stoll, Glickman & Bellina, LLP
By: Leo Glickman (LG3644)
Attorney for Plaintiff
475 Atlantic Ave., 3rd Flr.
Brooklyn, NY  11217
(718) 852-3710
lglickman@stollglickman.com